UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY ROBSON,<br><br>Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | Case No. 4:17-cv-00416-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Plaintiff Larry Robson brought this action against Defendant Union Pacific Railroad Company for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Before the Court are Union Pacific's Motion for Summary Judgment (Dkt. 32), and Robson's Objection to Exhibit 1Q in Support of Defendant Union Pacific Railroad Company's Motion for Summary Judgment (Dkt. 40). The Court heard oral arguments on the motions on October 16, 2019 and took them under advisement. For the reasons discussed below, the Court will deny Defendant's motion for summary judgment, and deny Plaintiff's objection to Exhibit 1Q as moot.

## BACKGROUND

Plaintiff Larry Robson has been employed by Union Pacific since May 2004. *Compl.* ¶ 7, Dkt. 1. He is currently employed as a machinist. *Id.*

On September 4, 2015, Robson suffered a severe traumatic brain injury due to an ATV accident. *Compl.* ¶ 8; *see Def.'s SOF* ¶ 11, 37, Dkt. 34. A CT scan showed that Robson had "a left convexity subarachnoid hemorrhage with punctate hyperdensity in his left anterior temporal lobe and parietal lobe suspicious for cortical contusions." *Def.'s Ex. 1F*, Dkt. 33 at 76. This means he had bleeding within his brain, between the brain and the membrane that covers the brain, and between that membrane and the skull. Robson was released from the hospital, but on September 8, 2015, Robson awoke confused and disoriented, he was readmitted to the hospital for observation. *Def.'s Ex. 1G*, Dkt. 33 at 81. Robson's treating neurosurgeon, Dr. Morgan, determined that Robson's symptoms were most likely due to post-concussive symptoms and not a seizure. *Morgan Depo.* at 38–40, Dkt. 39-7.

On October 14, 2015, Robson was authorized to return to work without restrictions by his treating Nurse Practitioner. *Def.'s Ex. 1M,* Dkt. 33 at 100. Union Pacific required Robson to undergo a medical fitness-for-duty evaluation before it would allow him to return to work. *Pl.'s Ex. C* at 2–3, Dkt. 39-3. On November 12, 2015, Dr. Reed Wilson, a consulting neurologist, reviewed Robson's medical

records and determined that Robson had suffered a severe traumatic brain injury. Dr. Wilson recommended that Robson be placed on permanent restrictions from safety critical work based on guidance from the Federal Motor Carrier Safety Administration Medical Examiner's Handbook. *Def.'s Ex. 1M*, Dkt. 33 at 102. Dr. John Holland, Chief Medical Officer for Union Pacific, adopted this recommendation and issued a Fitness-for-Duty Determination for Robson permanently restricting him from (1) operating company vehicles, on track equipment or other mobile equipment, or forklifts (2) working on or near moving trains, freight cars or locomotives without protective barriers, (3) operating cranes, hoists or machinery, (4) working at unprotected heights above four feet above ground, and (5) making decisions or performing acts that can affect the safety of others. *Def.'s Ex. 1D,* Dkt. 33 at 49–50.

In January 2016, Robson had a CT scan that showed interval resolution of the previously seen contusions and hemorrhages of his brain – in other words, his CT scan was normal. *Def.'s Ex. 1N,* Dkt. 33 at 116; *Charbonneau Depo.* at 30, Dkt. 39-4; *Wilson Depo.* at 29–30, Dkt. 39-5. That same month, Robson's treating physician, Dr. Morgan, provided him a written release to "return to work full duty w/ no restrictions." *Def.'s Ex. 1N,* Dkt. 33 at 109. Based on this release, Robson asked Union Pacific to reconsider his fitness-for-duty determination and provided additional medical records. *Id.* at 105.

After a follow-up review, Dr. Wilson and Dr. Holland concluded that Robson should be restricted for five years rather than permanently. *Def.'s Ex. 1O*, Dkt. 33 at 121; *Wilson Depo.* at 61–62, Dkt. 39-5; *Holland Depo.* at 36–37, Dkt. 39-2. Although the restrictions prevented Robson from performing some of the essential functions of the machinist job Union Pacific allowed him to return to work as a machinist. *Def.'s Ex. 1A* at 58, Dkt. 33.

Robson claims that, because his brain injury has resolved, and he was cleared to return to work without restrictions by his treating physician, he is able to perform all of the essential functions of a machinist. *Compl.* ¶ 16. Since returning to work, Robson alleges that he has not been sent on certain jobs and has lost overtime opportunities due to the restrictions. *Compl.* ¶ 12. Robson alleges that, by unnecessarily restricting him from certain jobs, Union Pacific has discriminated against him in violation of the ADA.

## LEGAL STANDARD

1.  **Plaintiff's Objection to Exhibit 1Q**

    Federal Rule 56(c) governs the procedures that the parties must comply with to support or dispute a motion for summary judgment. See Fed. R. Civ. P. 56(c). Under Rule 56(c)(2), a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id.* An affidavit is an acceptable form in which to present evidence in the summary

judgment context. However, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Rule 56 makes clear then that only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c). However, in determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment. *Id.*

2.  **Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).

Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

**1.     Plaintiff's Objection to Defendant's Exhibit 1Q**

Robson objects to two accident reports contained in Defendant's Exhibit 1Q and asks the Court to disregard or not consider these reports. Robson argues that the reports are lacking foundation and are irrelevant, and are therefore inadmissible pursuant to Federal Rules of Evidence 401 and 402. The Court has not relied on these reports in Exhibit 1Q in reaching its decision, so to the extent the reports and Exhibit 1Q are objected to, that objection is moot.

**2.     Defendant's Motion for Summary Judgment**

To state a prima facie case for a disability discrimination claim, a plaintiff must show that: (1) he is disabled within the meaning of the ADA, (2) he is able to perform the essential functions of the job with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). A person meets the definition of disabled under the ADA when his employer regards the employee as disabled. 29 C.F.R. § 1630.2(g)(1)(iii).

Union Pacific argues that it is entitled to summary judgment on Robson's single claim of disability discrimination for three reasons: (1) Union Pacific did not regard Robson as having a disability; (2) Robson is not qualified for his position as a machinist because he cannot safely perform the essential functions of his job; and (3) Robson's brain injury creates an unacceptable risk that he will become suddenly incapacitated while performing in a safety-critical position, and thus, he poses "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b).

### A. Whether Union Pacific regarded Robson as having a disability

The ADA defines "disability," in relevant part, as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; . . . or (C) [an individual] being regarded as having such an impairment." 42 U.S.C. 12102(1). A physical or mental impairment means:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>
> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

In a "regarded as" disabled claim, a plaintiff must show that he was "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434 (9th Cir. 2018). Thus, "a plaintiff must show that the employer knew that the employee had an actual impairment or perceived the employee to have an impairment, and that the impairment was not transitory or minor." *EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 923 (9th Cir. 2018). The definition of disability is construed broadly. 42 U.S.C. § 12102(4)(A). Accordingly, "perceived impairment," which forms part of the definition of "disability" is also broadly construed. *E.E.O.C. v. BNSF Ry. Co.*, 902 F.3d 916, 923 (9th Cir. 2018).

In this case, it is undisputed that Union Pacific knew Robson had suffered a traumatic brain injury that resulted in a subarachnoid hemorrhage. *Def.'s SOF ¶ 13, Dkt. 34.* As a result of this traumatic brain injury, Union Pacific considers Robson to have an increased risk of seizures for five years from the date of his injury. *Holland Depo.* at 75–76, Dkt. 39-2. Union Pacific argues that it did not regard Robson as having any physical or mental functional limitations. Rather, due to Robson's prior brain injury, Union Pacific believes that Robson had an unacceptable risk of sudden incapacitation. *Def.'s Br.* at 5, Dkt. 32-1. Union

Pacific relies on *Morris v. BNSF Railway Company* to argue that they did not regard Robson as having an impairment because his risk of seizures is a predisposition to certain health risks, not an impairment. *Id.* at 5-6 (citing *Morriss v. BNSF Ry. Co.*, 2014 WL 6612604, at *3 (D. Neb. Nov. 20, 2014), *aff'd*, 817 F.3d 1104 (8th Cir. 2016)).[1]

In *Morriss*, the plaintiff was denied employment because his high body mass index was associated with significant risk of developing health risks in the future. *Morris*, at *3. The court in *Morris* held that the defendant did not regard plaintiff as disabled because the plaintiff's obesity was not caused by an underlying physiological disorder, and the defendant regarded plaintiff as being at risk for developing health risks in the future, rather than at current risk. *Id.* This Court finds the present case to be distinguishable from *Morris*.

First, Union Pacific's Doctors believed that Robson's traumatic brain injury caused him to be at risk for seizures. Dr. Holland and Associate Medical Director Dr. John Charbonneau both testified that Robson was placed on work restrictions because Robson has an underlying health condition, a traumatic brain injury

---

[1] Union Pacific filed a Notice of Supplemental Authority (Dkt. 47), alerting the Court to *Shell v. Burlington Northern Santa Fe Railroad Company*, No. 1:15-cv-11040 (7th Cir. October 29, 2019) (No. 19-1030). Robson objects to this filing (Dkt. 48), because he views it as an additional brief beyond the limits of Local Rule 7.1. The Court appreciates notice of relevant legal authority, however *Shell,* like *Morris,* is distinguishable from Robson's situation.

resulting in a subarachnoid hemorrhage affecting the cortical aspect of the brain, that creates a risk of seizures for five years. *Holland Depo.* at 24–25, Dkt. 39-2; *Charbonneau Depo.* at 55–57, Dkt. 39-4. Second, Robson's risk of seizures is not a future risk as in *Morriss.* Robson was restricted from certain tasks because Union Pacific believes he has a current risk of seizures, which will continue for five years. Union Pacific believes that this current risk prevents Robson from safely doing his job now. Unlike *Morriss*, Union Pacific did not restrict Robson because in the future he may develop a risk for seizures, which will then make him unable to safely perform his job. *Holland Depo.* at 59, 75, 78, 115, Dkt. 39-2.

Union Pacific clearly knew of Robson's traumatic brain injury. It believed that, due to the brain injury, he was at a current and ongoing risk of seizures. A traumatic brain injury is a physiological condition which is an impairment. *See* 29 C.F.R. Pt 1630, App. Whether or not Robson's injuries had fully resolved, it appears from the record that Union Pacific believed he was at a current risk of seizures due to that impairment. Union Pacific has not met its burden of proving there is no material dispute of fact as to whether they regarded Robson as disabled. Instead, the evidence in the record indicates that Union Pacific regarded Robson as disabled.

    **B.**    **Whether Robson was qualified for the position of machinist.**

A plaintiff bears the burden to demonstrate not only that he is disabled as defined by the ADA, but also that he is qualified to perform the essential functions of the job. To be a qualified individual with a disability, an individual must satisfy "the requisite skill, experience, education and other job- related requirements of the employment position," and "with or without reasonable accommodation," the individual must be able to perform "the essential functions of the position." 29 C.F.R. § 1630.2(m).

In their evaluation of Robson's fitness for duty, Dr. Holland, Dr. Wilson and Dr. Charbonneau referred to the FMCSA Handbook, and imposed work restrictions for Robson for five years.[2] *Holland Depo.* at 114, Dkt. 39-2; *Charbonneau Depo.* at 55–56, Dkt. 39-4; *Wilson Depo.* at 45, 61–62, Dkt. 39-5. As a result, Union Pacific restricted Robson from operating cranes, hoists, or machinery; working on or near moving trains, freight cars or locomotives; and working at unprotected heights over four feet above the work surface for five years from the date of his brain injury. *Pl.'s Ex. C* at 2–3, Dkt. 39-3; *Holland Depo.* at

---

[2] The FMCSA considers a person with a history of subarachnoid hemorrhage with cortical deficits to have an increased risk of seizures for five years following the injury and consequently recommends a five-year waiting period before certifying such an individual as a commercial driver. *FMCSA Handbook* at 161, Dkt. 33-1; *Holland Depo.* at 78, Dkt. 39-2 at 78; *Wilson Depo.* at 62, Dkt. 39-5 at 17.

108, Dkt. 39-2. The parties do not dispute that these are essential functions of the machinist position.

Prior to his brain injury, Robson was performing all of the essential duties of his position as a machinist. *Robson Depo.* at 58, Dkt. 33. In January 2016, Robson was released by his treating physician, Dr. Morgan, to return to work as a machinist at Union Pacific without restrictions. *Def's Exhibit 1J,* Dkt. 33 at 88. Robson has not been restricted from performing any of his job duties at Union Pacific by a treating health care provider since that time. *Robson Depo.* at 52, Dkt. 33. Further, Dr. Morgan testified that, in his opinion, Robson was at no more risk of having a seizure than the general population. *Morgan Depo.* at 60, Dkt. 39-7. Thus, Robson asserts, he is a qualified individual. *Pl.'s Resp.* at 9, Dkt. 36.

Union Pacific argues that Robson was not qualified for the machinist position when he returned to work, and still is not qualified, because his brain injury is associated with a risk for sudden incapacitation that prevents Robson from performing his job safely. *Def.'s Br.* at 8., Dkt. 32-1. Union Pacific does not dispute that Robson was qualified for the position of machinist before his accident. It also does not dispute that, but for his alleged increased risk of seizures, he is otherwise qualified and able to perform all of the essential functions of his position. The only reason Union Pacific asserts that Robson is not a "qualified individual" is due to what they believe is his increased risk of seizures. However,

at the hearing on their motion, Union Pacific conceded that Robson's brain injury had resolved by the time he sought to return to work without restriction.

Union Pacific also argues that Dr. Holland's reliance the FMCSA Medical Examiner Handbook for guidance to determine qualifications for employees in safety-critical positions is appropriate. *Def.'s Br.* at 7-8, Dkt. 32-1. The record before the Court is not clear as to whether Union Pacific has actually adopted the standards of the FMCSA Handbook as a company policy defining qualifications for safety-critical positions.

Robson has offered expert evidence that he is at no greater risk of seizures than the general population. Union Pacific has offered evidence that he is at a greater risk, but concedes that his brain injury healed. Further, it is not clear that the standards of the FMSCA Handbook are part of Robson's qualifications. Thus, there is a genuine issue of material fact regarding whether Robson is a qualified individual.

    C.    **Whether Robson posed a direct threat.**

Union Pacific asserts that Robson's risk for sudden incapacitation posed a direct threat to the safety of others in the workplace. *Def.'s Br.* at 9-10, Dkt. 32-1. Union Pacific bears the burden of proving this defense. *See* 29 C.F.R. §§ 1630.15(b)(2). A "direct threat" is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodations." 42 U.S.C. §

12111(3). Whether a person poses such a direct threat must be determined based upon an "individualized assessment of [his] present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r). The assessment must rely on the best current medical or other objective evidence and consider (1) the duration of the risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm." *Id.*; *see also Nunes v. Wal-mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999) (citing *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998)).

In this case, as explained above, there is a genuine issue of material fact regarding whether Robson is able to safely perform the essential functions of the machinist job. Union Pacific argues that Robson cannot perform his job safely because he has an unacceptable risk of sudden incapacitation that poses a significant risk to the health and safety of others. *Def.'s Br.* at 8, Dkt. 32-1. This argument rests on the expert medical opinions of Dr. Holland and Dr. Wilson who testified that Robson has an unacceptable risk of seizure for five years following his subarachnoid hemorrhage involving the cortical aspect of his brain. *Holland Depo.* at 114, Dkt. 39-2; *Wilson Depo.* at 45, 61–62, Dkt. 39-5.

Robson's treating physician disagrees. Dr. Morgan diagnosed Robson as having no neurological impairment and released Robson to work full duty with no restrictions. *Morgan Depo.* at 52, Dkt. 39-7. He also testified that Robson is at no

greater risk of seizure than the general population, and his risk of sudden incapacitation is extremely small, if it even exists at all. *Morgan Depo.* at 12–13, 60, Dkt. 39-7.

The Court finds there is a triable issue of fact whether Robson posed a direct threat in this case. This is a classic "battle of the experts" about whether Robson was capable of safely performing the essential functions of the machinist position. It is not a district court's function on summary judgment to "resolve an issue of fact based on conflicting expert testimony." *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979); *see Thomas v. Newton Intern. Enterprises*, 42 F.3d 1266, 1270 (9th Cir. 1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion."). Robson has raised a material issue of fact as to whether Union Pacific's decision that Robson posed a direct threat was "based on a reasonable medical judgment that relied on the most current medical knowledge and/or the best available objective evidence." 29 C.F.R. § 1630.2(r).

### D. Conclusion.

As explained above, there are disputed issues of material fact as to whether (1) Union Pacific regarded Robson as disabled, (2) Robson was qualified for the position of machinist, and (3) Robson's employment as a machinist would pose a

direct threat to the safety of others in the workplace. Therefore, summary judgment is denied.

## ORDER

**IT IS HEREBY ORDERED that:**

1. Defendant's Motion for Summary Judgment (Dkt. 32) is **DENIED**.

2. Plaintiff's Objection to Exhibit 1Q in Support of Defendant Union Pacific Railroad Company's Motion for Summary Judgment (Dkt. 40) is **DENIED as MOOT**.

DATED: December 13, 2019

_____
B. Lynn Winmill
U.S. District Court Judge